SHUPE and others, Appellants, vs. JENKS, Administrator, and others, Respondents.

*February 9—March 6, 1928.*

*Executors and administrators: Duty to convert assets of estate into cash: Diligence: Sales of personal property: Failure to settle estate: Loss in value of bank stock: Liability of executor: Interest.*

1. An administrator is a trustee, and as such holds the legal title to the personal property of the deceased, and, like a trustee, will be protected by the court where he exercises ordinary care in the performance of his duties and acts in good faith. p. 337.

2. The legality of the acts of an administrator in selling assets scheduled in the inventory at a price equal to or in excess of the appraised value cannot be questioned unless they are tainted with fraud, since the appraisal is designed to fix a standard for the guidance of the administrator in the sale of the personal property. p. 338.

3. If no offer for the personal property at the appraised valuation or in excess thereof can be secured, the administrator may apply to the court for authority to sell for less than the appraised value, and such order will fully protect him in such sale, in the absence of fraud on the court, under sec. 312.18, Stats. p. 338.

4. An administrator, in the sale of personal property, is not required to warrant or guarantee the title, the soundness of the articles, or their value; and the doctrine of *caveat emptor* strictly applies. p. 338.

5. A probate court, in the exercise of its jurisdiction, is vested by law with the powers of a court of equity to the extent that the exercise of such powers may be necessary for the protection of the parties over whom it has jurisdiction; and if the administrator was in doubt about the legality or advisability of a sale of personal property, he may apply to the court for instructions, and may relieve himself of responsibility by abiding the instructions of the court.   p. 338.

6. A personal representative is negligent in the performance of his duties if he violates the statutes contemplating that the estate should be liquidated and settled within one year or fails to apply to the court, on sufficient grounds, for an extension of the time; and if he violates his duties, he and his sureties are responsible on the bond to the extent of the damage suffered by those interested in the estate.   p. 340.

7. In an action against an administrator and his sureties for the failure of the administrator to sell bank stock and for delay in settling the estate, so that such stock became worthless on the insolvency of the bank, which was reorganized two years and six months after the administrator's appointment, the extent of the loss or damage was a question for the jury, in view of testimony that the insolvency was mainly on account of frozen assets.   p. 340.

8. The jury in fixing the loss, if any, on account of the payment of interest on claims filed, occasioned by the failure to sell stock, must consider the provisions of sec. 313.13, Stats., requiring an administrator to render an account to the county court within sixty days after the expiration of the time limited for creditors to present their claims.   p. 341.

APPEAL from a judgment of the circuit court for Clark county: E. W. CROSBY, Circuit Judge.   *Reversed.*

The appeal is from a judgment in defendants' favor, dismissing the complaint with costs.   The action was begun October 29, 1926, and judgment was entered December 15, 1926.

The action is one brought by the plaintiffs, heirs at law of one Frank B. Shupe, deceased, with the consent of the county judge of said county, who was also made a party plaintiff hereto, against the defendants, *R. M. Jenks,* the administrator of the estate of the deceased, and the two sureties upon his bond, viz. *A. A. Graves* and *B. Christman.*

On the 17th day of May, 1921, the defendant *Jenks,* who at that time was the cashier of the Loyal State Bank, was appointed by the county court of Clark county, upon proceedings duly had in that behalf, the administrator of the estate of the deceased. The bond for $5,000 was duly executed, and approved by the court, and the administrator then entered upon the performance of his official duties.

The assets of the estate consisted in part of fifteen shares of the capital stock of the Loyal State Bank. No official inventory was made or filed by the administrator, and the estate at no time was appraised, as required by the statutes. The following claims were duly filed by creditors in the matter of the estate, to wit: Note of Helen Emerson for $2,800; note of the Loyal State Bank for $2,000; and a claim of Etta & Son for $3. The Emerson note was settled outside of court and withdrawn from the estate's files. The note of the bank was settled, the widow contributing the major portion of the amount required,. and the administrator the balance. The claim of Etta & Son was paid. Owing to the financial condition of the bank in the fall of 1923, an assessment of 200 per cent. on the capital. stock was levied, and, the estate failing to comply therewith, the stock was sold, with the result that the fifteen shares became a total loss to the estate. It further appears that no effort was made by the administrator to sell or dispose of the fifteen shares of stock in the Loyal State Bank, notwithstanding the repeated requests of the heirs in that behalf.

On December 15 and December 31, 1921, twenty-eight shares of the capital stock of the bank belonging to the defendant *Graves,* who was the president and principal stockholder of the bank, were sold, through the defendant *Jenks,* to twelve different persons, for the sum of $125 per share, the purchasers executing their promissory notes therefor, and the defendant *Jenks* testified that at the time of the sale he considered the purchasers financially responsible. Up to

the time of the trial none of these notes had been collected. On March 16, 1922, four shares were sold to three different parties, and on April 15, 1922, one share was sold, these latter shares yielding $125 per share, one share being sold for $123. It also appears from the testimony of one Richardson, who became the assistant cashier after the reorganization of the bank, that the bank was insolvent since 1919, and that the principal cause of such insolvency was frozen assets; that the book value of the stock was $125 per share.

At the close of the testimony, pursuant to a motion of defendants' counsel, the court directed a verdict in defendants' favor, and judgment was thereupon rendered accordingly, dismissing plaintiffs' complaint with costs. From the judgment so entered this appeal was prosecuted. Further facts will be referred to in the opinion.

For the appellants there was a brief by *Rush & Devos* of Neillsville, and oral argument by *W. J. Rush.*

For the respondents there was a brief by *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau.*

DOERFLER, J. Plaintiffs' counsel in their complaint specifically charge a failure on the part of the defendant *Jenks,* as administrator, to make and file an inventory and to cause an appraisal to be made of the assets; also a failure to offer for sale and dispose of the fifteen shares of stock in the Loyal State Bank; and alleges that as a result of such failure the conditions of the administrator's bond were breached and that the heirs of the deceased suffered a loss of $1,875. Plaintiffs also in their complaint allege a number of other breaches of the official bond, such as the failure to take the proper legal steps necessary to wind up the estate; failure to pay the claims of creditors; failure to make and file an account, etc.

An administrator is a trustee, and as such holds the legal

title to the personal property. In the performance of his duties, if he exercises ordinary care and acts in good faith, the administrator, like a trustee, will be protected by the court. The appraisal of the assets scheduled in the inventory is designed to fix a standard for the guidance of the administrator in the sale of the personal property, and while acting in good faith the property may be sold by him at public or private sale at a price equal to or in excess of the appraised value, and the legality of his acts cannot be questioned unless they are tainted with fraud. If no offer for personal property at the appraised valuation or in excess thereof can be secured, the administrator may apply to the court for authority to sell for less than the appraised value, and such order of the court will fully protect him in such sale, unless he has been guilty of an act which in its effect amounts to a fraud upon the court. Sec. 312.18, Stats. See, also, *Williams v. Ely,* 13 Wis. 1; *Munteith v. Rahn,* 14 Wis. 210; Gary, Probate Law (3d ed.), § 333. Furthermore, an administrator in the sale of personal property is not required to warrant or guarantee the title, the soundness of the article or articles, or their value. The doctrine of *caveat emptor* strictly applies. 11 Ruling Case Law, title Executors and Administrators, p. 388, sec. 467.

A probate court in the exercise of its jurisdiction is vested by law with the powers of a court of equity to the extent that the exercise of such powers may be necessary for the protection of the parties over whom it has jurisdiction. As in the case of an ordinary trustee, the administrator, entertaining doubts as to the advisability or legality of a sale of the personal assets of the deceased, is authorized to apply to the court for directions or instructions with respect to the course or policy to be pursued by him in the performance of his official duties. Therefore, in the instant case, had the administrator entertained an honest conviction that the bank stock in question was of no value and that a sale thereof would constitute a fraud, he could have applied to the court

to exercise its equitable jurisdiction in the premises, and if under all the facts and circumstances the court would have agreed with him, he could have been relieved of responsibility by the order of the court. The evidence, however, discloses an utter lack of a recognition or appreciation of his rights or obligations. Up to the time when it became necessary to reorganize the bank (at which time a period of two years and six months had elapsed after the appointment of the administrator), no effort was made by him to dispose of this bank stock. He did not even make out an inventory or procure an appraisal. He ignored the repeated urgent requests of the heirs to sell this stock and to apply the proceeds to the liquidation of the debts of the deceased. It is difficult to perceive how an administrator could have been more negligent in the administration of the estate of a deceased person. There is an abundance of credible evidence in this case that if the administrator as an official of the court had exercised but a fair percentage of the diligence which he exercised when he disposed of the stock of others, a substantial amount might have been realized on this stock; and all of this could have been accomplished without warranting or guaranteeing either the title or the value of the same.

In the fall of 1921, which was three years after the ending of the World War, property values receded to substantially pre-war values. There was evidently a large shrinkage in the value of securities held by the bank. These securities, however, were retained by the bank, but unquestionably could not be disposed of at a price equal to their appraised valuation at the time they were taken by the bank as collateral. They became frozen assets, and for this reason, principally, when the bank was reorganized it was considered insolvent. In other words, it was deemed insolvent principally on account of the frozen assets, as appears from the testimony. An asset may be deemed a frozen asset at one time, and shortly thereafter may become readily marketable

at a fair price. In fact, a bank unable to meet its current obligations when they fall due, on account of its holding frozen assets, is deemed insolvent, but such a condition may oftentimes be overcome by a change in the economic situation; but a bank unable to meet its current obligations when they fall due, due to impairment of its capital by a substantial depletion of its assets, can rarely be rehabilitated unless an amount of necessary new capital is added to the assets of the bank. It was the hope and view of the stockholders, the officers, and the directors of this bank for a period of three years that the bank might be rehabilitated; and this hope and view were also shared by the banking commissioner of the state, otherwise drastic steps would have been taken for the protection of the interests of the public.

In the ordinary course of events, an estate like the instant one could have been liquidated and settled before the expiration of one year. This is contemplated by the express wording of the statutes, and a personal representative is negligent in the performance of his duties if he either violates them or fails to apply to the court, upon sufficient grounds, for an extension of the time. For the violation of the duties of the defendant administrator and for his neglect as heretofore indicated, he and his sureties are responsible on the bond to the extent of the damage suffered by those interested in the estate.

In view, therefore, of all of the evidence in the case, including the testimony of one Richardson, the bank cashier, who testified that the bank was insolvent since the year 1919, mainly on account of the frozen assets possessed by it, the extent of the loss or damage constitutes a question for a jury to decide, and the court therefore committed error in directing a verdict for the defendants.

At the opening of the trial defendants' counsel moved to amend the complaint by increasing the damages sought to be recovered from $1,875 to $5,000, the amount of the

penalty of the bond. Plaintiffs also claim that the failure to sell the bank stock resulted in damage because interest had to be paid upon claims filed. Whether the bank stock had a value, and, if so, the amount of its value, were questions for the jury, and the loss which would result by the payment of interest depends largely upon the value fixed by the jury upon the stock. It would also appear that the application to amend the complaint should have been granted.

Sec. 313.13 of the Statutes provides that, within sixty days after the expiration of the time limited for creditors to present their claims, every executor or administrator shall render an account of his administration to the county court, and the court shall thereupon direct him to proceed forthwith with the payment of the debts and final settlement of the estate, excepting under certain conditions enumerated in the statute, pursuant to which the court may grant an extension of time; and the provisions of this statute must be taken into consideration by the jury in fixing the loss, if any, on account of the payment of interest.

*By the Court.*—The judgment of the lower court is reversed, and the cause is remanded for a new trial and for further proceedings in accordance with this opinion.