People of the State of Illinois ex rel. Peter J. Knaus, et al., Plaintiffs-Appellees, v. Village of Hinsdale, an Illinois Municipal Corporation, Defendant-Appellant.

Gen. No. 69–11.

Second District.

August 12, 1969.

Klein, Thorpe, Kasson & Jenkins, of Chicago, for appellant.

Corrigan, Mackay, Quetsch & O'Reilly, of Wheaton, for appellees.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

The trial court entered judgment in Quo Warranto ousting the Village from certain territory alleged to have been annexed in 1923, and setting aside a 1967 annexation which would thereby lack contiguity to the Village.

The Village, appealing from the judgment, urges that there is no omission between the west boundary of the 1923 annexation and the east boundary of the 1967 annexation; but that, in any event, plaintiffs are estopped because of acquiescence in the exercise of jursidiction by Hinsdale in the disputed area for some 40 years.

Plaintiffs argue that no ambiguity exists with reference to the boundary description in the 1923 ordinance, and that the description in that ordinance clearly creates an omitted area between the territory described in the

two ordinances; and that the Village did not sustain its burden of establishing de facto jurisdiction over the allegedly omitted area by a preponderance of the evidence.

Petitioners are the majority of property owners of record and the majority of electors in the disputed territory. Their request to the Attorney General and to the State's Attorney to institute the proceedings having been denied, they obtained leave of court to file the suit pursuant to Ill Rev Stats 1967, c 112, § 10. After a hearing before the court a judgment order of ouster was entered as to the disputed territory under the 1923 ordinance and the court also refused to vacate a previous order denying the annexation under the 1967 ordinance because of lack of contiguity.

The evidence consisting of the map accompanying the 1923 ordinance, together with expert testimony of petitioners' surveyor, would support a finding of fact that the description in the 1923 ordinance resulted in a substantial undescribed area between the 1923 and the 1967 annexations sufficient to support a judgment of ouster. We distinguish People ex rel. Chicago Title & Trust Co. v. City of Des Plaines, 76 Ill App2d 243, 222 NE2d 1 (1966). The gap between the areas annexed by the two ordinances in this case was a substantial area which could not be considered de minimis within the rule of the Des Plaines case.

We reverse the judgment below, however, because we believe it to be against the manifest weight of the evidence as we believe the Village has justified its authority by the exercise of de facto jurisdiction in the disputed area over a period of some 40 years with acquiescence of the public.

The answer of the Village, in addition to denying a gap in contiguity in the description of the territory sought to be annexed, alleged as an affirmative defense that the Village has "exercised jurisdiction over the area . . . for over 40 years . . . in the following manner:

370

"A. The property has been zoned by the Village of Hinsdale, a copy of the zoning map of the Village of Hinsdale being attached hereto as Exhibit 'A.' There is no zoning classification for the subject property other than that established by the Village of Hinsdale Zoning Ordinance.

"B. Street addresses have been established in the area pursuant to a 1932 Ordinance of the Village of Hinsdale.

"C. A storm sewer has been established in this area pursuant to a 1958 General Obligation Bond issue of the Village of Hinsdale. In addition, there have been five other General Obligation Bond issues of the Village of Hinsdale during the 40-year period where it has been represented to purchasers that the subject property is included within the Village boundaries. Taxes for said General Obligation Bond issue have been and are being extended on the subject property.

"D. Water Revenue Bonds have been issued by the Village of Hinsdale during the 40-year period and it has been represented to purchasers that water users in the subject area are included within the corporate limits of the Village of Hinsdale.

"E. Special assessments have been levied by the Village of Hinsdale on property in the subject area.

"F. The Village of Hinsdale has provided water service to a portion of the subject area for over 10 years. This is the only water service available to owners of property in the subject area.

"G. Real estate taxes have been assessed by the Village of Hinsdale and extended by the County of DuPage on the subject property for about 40 years.

"H. Building permits have been issued by the Village of Hinsdale for residences constructed in the subject area.

371

"I. The Village of Hinsdale has provided police and fire protection for the subject area for about 40 years.

"J. Washington Street, as included in the subject area, has been maintained by the Village of Hinsdale for 40 years."

No reply to the affirmative defense was presented until the date of the trial, some months after the filing of the pleading. On the trial date plaintiffs asked leave to file the reply, which admitted "that the Village has performed some minimal municipal services for a period of time, but they have no knowledge sufficient to form a belief as to the representations made in behalf of the Village and ask for strict proof thereof."

Counsel for the defendant objected to the filing of the reply or in the alternative asked for a continuance to bring in proof of the allegations which it had considered admitted for the purpose of trial. In a colloquy before the court, plaintiffs' counsel stated "even minimal services should suffice to enable him to make out a case." The court thereupon permitted the filing of the reply and required the parties to proceed. Respective counsel then discussed a stipulation of fact before the court. The discussion was framed with reference to the allegations of the affirmative defense which we have quoted above:

*Zoning:* Plaintiffs' counsel stipulated, "If you say it is zoned, I presume it has been zoned."

*Street Addresses:* Plaintiffs' counsel agreed, "But if you say it is true, I will admit it."

*Storm Sewers:* Mr. Knaus, one of the plaintiffs, admitted that a storm sewer passed through the property in dispute, but stated "It is for Hinsdale." He also admitted that no drainage was needed in the area, stating "We are up on top of a hill." Counsel for plaintiffs thereupon stipulated, "We will admit it, subject to that understanding."

372

(Plaintiffs refused to stipulate to the issuance of water revenue bonds, and the confirming of special assessments in the disputed area. However, counsel for plaintiffs had, in an introductory statement, agreed that a water main was established in the area.)

*Assessment and extension of real estate taxes by the Village:* Was stipulated, "subject to the qualification that two of the property owners are objecting to it."

*Issuance of building permits:* That the Village had issued building permits for the three residences built in the subject area was stipulated in the language of plaintiffs' counsel, "I assume it would."

*Police and Fire Protection:* Was admitted to the extent that police cars of the Village passed through the area. However, the witness Knaus stated that there had been no fires and no police work in the area.

*Maintenance of Washington Street* (The disputed boundary line of the 1923 annexation): Was admitted in the language of plaintiffs' counsel that he was prepared to stipulate that "The road is improved." Knaus in his testimony conceded that the Village had "thrown blacktop on the chuck holes" on occasion.

At one point in the recital of the stipulations, counsel for plaintiffs stated "It seems to me that if we have agreed to everything up to that point, certainly you have enough municipal services."

██ Quo Warranto is a high prerogative writ and courts in administering the remedy should proceed with due deliberation and caution and with the exercise of sound discretion, considering whether the public interest will be served or damaged by the writ and the necessity for and the policy of allowing the remedy. People ex rel. Adamowski v. Wilson, 20 Ill2d 568, 578–9, 170 NE2d 605 (1960). In a quo warranto action to test the validity of an annexation by a municipality acting under its legislative powers, the latter must either disclaim or justify its right to the territory in dispute;

373

and in justifying, the Village must assume the burden of proving either its title or facts showing such acquiescence by the public in the exercise of jurisdiction by the municipality as should bar the prosecution of the suit. People v. City of Peoria, 166 Ill 517, 526, 46 NE 1075 (1897); People v. City of LeRoy, 293 Ill 278, 281, 127 NE 695 (1920); People ex rel. Town of Richwoods v. Peoria, 80 Ill App2d 359, 363–4, 225 NE2d 48 (1967).

██ In People v. Pike, 197 Ill 449, 454, 64 NE 393 (1902), the court stated:

> Municipal corporations being required by public necessity, the law itself, for the purpose of strengthening the infirmity of evidence and upholding the public peace and the security of private property, will indulge, after long continued use of corporate powers and the public acquiescence, in presumptions in favor of their legal existence. The policy of the law is to sustain rather than to defeat them. (Jameson v. People, 16 Ill 257; Chicago City Railway Co. v. People, 73 id. 541.)

The defendant relies principally on People v. LeRoy, supra. In that case, the quo warranto petition had charged the city with unlawfully exercising corporate powers for 13 years over a tract of land which had not been properly annexed. The Supreme Court found the annexation void, but affirmed the lower court's denial of the writ because it found that by long acquiescence a condition had arisen that great injury or injustice would result in the allowance of the writ, so that the remedy was properly refused. The manner of the exercise of authority admitted by the pleadings included the levy and collection of taxes, the making of public improvements by special assessments, including judgments of confirmation; the issuance of bonds by the city upon the votes of the inhabitants of the disputed territory as well as the other inhabitants of the city; the construction of

374

pavements, watermains and sewers improving the property in the disputed area, all without objection for more than 10 years.

The court concluded (on page 284) :

> No benefit can result from cutting off from the city the territory in question after the many years of peaceful and satisfactory union, universally acquiesced in.

Plaintiffs seek to distinguish the facts admitted by the pleadings in the LeRoy case from the facts admitted by stipulation in this case, arguing that there was a wealth of definite factual details in the LeRoy case opposed to the recital of a "vague" stipulation of acts of jurisdiction in this record. They argue that a "stipulation, like a presumption, operates prospectively and not retroactively, and, while the petitioner stipulated that certain minimal acts had been done by the Village, it did not stipulate regarding the length of time any given act of jurisdiction had been performed, nor did it stipulate regarding the degree or quality of the service being performed."

For example, it is suggested that the record does not show *when* the property was zoned, and plaintiffs suggest that it could have been zoned after the passage of the 1967 ordinance. We are not persuaded by the argument in view of the manner in which the stipulation was recited in terms of the allegations in the affirmative defense, stating acts of jurisdiction over a 40-year period.

Similarly, it is suggested that, although the plaintiff admitted that a storm sewer passed through the property, "there was no reference to a 1958 general obligation bond issue, nor was it admitted in evidence." The stipulation made it unnecessary to offer further proof of that issue. Plaintiff further suggests that the storm sewer might have been installed and assessments made

under the provisions of Ill Rev Stats 1967, c 24, § 11–126–7 providing for local improvements on property beyond corporate limits. The 1958 bonds referred to in the affirmative defense, however, could not have been issued under the statute referred to inasmuch as it was not enacted until 1963.

In addition, the court mentioned five other bonds over the 40-year period. While plaintiffs now suggest that the date of issue was not specified and that it is not clear whether they covered only the area admittedly in Hinsdale or the intervening area as well, there was no such limitation referred to in the discussion of the stipulation in the trial court.

Plaintiffs also suggest that the stipulation as to the providing of water service in the area by the Village is vague because this also might have been done under the provisions of chapter 24, section 11–126–7, supra. Again, the stipulation was not limited in the trial court and, reasonably considered, the stipulation dispensed with proof of the exercise of jurisdiction in the nature of the providing of water service in the disputed area over the 10 years alleged in the affirmative defense.

Likewise, the attempt to limit the stipulation of the levying of real estate taxes in the disputed area by arguing that the residences are partially within the village and partially in the intervening area and "it is impossible to tell from the stipulations whether the village levied taxes on the whole of each residence or only that portion admittedly within the village," is not persuasive. The allegation referred to the levying of real estate taxes in the subject area over a 40-year period and this was proved by the stipulation.

It is our opinion that in the context of the record, plaintiffs for the first time on appeal are attempting to limit the reasonable intendment of stipulations entered into at a time when defendant was taken by surprise at the trial and was asking for a postponement to offer

proof of the allegations of the affirmative defense. It is apparent from the record that the stipulations were assumed to allow the trial to go on without the necessity of further proof as to those allegations to which plaintiffs stipulated.

█ While it is true that the Village may not have maintained roads in a substantially undeveloped area consistent with the standard in the adjoining area, we believe that the record shows that the Village has exercised municipal jurisdiction in the disputed area for over 40 years, and that the trial court's finding to the contrary is against the manifest weight of the evidence. In the context of the City of LeRoy case, supra, we can perceive no benefit that would result from cutting off from the city the territory in question after the many years of peaceful union without objection.

The judgment below will be reversed.

Reversed.

MORAN, P. J. and DAVIS, J., concur.