Coolidge and others, Respondents, vs. Rueth and another, Appellants.

*October 14—November 9, 1932.*

For the appellants there was a brief by *Hill, Beckwith & Harrington* of Madison, and oral argument by *D. V. W. Beckwith.*

For the respondents there was a brief by *Riley & Ohm* and *Robert N. Nelson,* all of Madison, and oral argument by *Mr. Miles C. Riley* and *Mr. Nelson.*

ROSENBERRY, C. J. The first contention made by the defendants is that the opinion of the trial court and not the formal findings of fact reflects the true findings of fact. This contention, although it seems to be urged in perfect good faith, is in view of the record in this case a surprising one.

Sec. 270.33, Stats., requires the court upon the trial of a question of fact to give its decision in writing, in which the court shall state separately (a) the facts found; (b) the conclusions of law thereon. Sub. (2) of the section provides that the decision shall be prepared either from the court's minutes or from the findings submitted by the parties or both.

In this case the court filed a decision. At the close, the court made the following direction: "Let findings be pre-

pared accordingly by counsel for the plaintiffs." Findings were so prepared and submitted to counsel for the defendants. To the proposed findings counsel for the defendants made written objection. The fifth objection was:

"Object to the following language contained in folio 19: 'Said administrator failed to exercise that good faith and common prudence which the law requires,' for the reason that the evidence wholly fails to reveal any *mala fides* or culpable negligence of the said administrator."

After hearing, counsel for defendants signed the following stipulation:

"It is conceded that the annexed findings and judgment conform to the directions of the court made on the hearing of defendants' objections to the original draft of findings and judgment."

In their brief on appeal counsel say:

"We insist on this appeal that there is no competent finding of *mala fides* concerning the conduct of the administrator, since the decision rendered by the court is barren of any such finding either by direction or implication. . . .

"We do not inject this discussion into this case without reason, for we feel that the supreme court should know how these findings characterizing Batz's discharge of his duties as lacking good faith happen to be in the record."

The stipulation made by counsel for defendants indicates that the findings are in the record because they were directed by the court to be there. In the absence of such a stipulation, findings of fact required to be filed pursuant to the provisions of sec. 270.33 control over statements made in the opinion of the court in case of conflict. *Zimmerman v. Treleven,* 192 Wis. 214, 212 N. W. 266; *Adams v. Adams,* 178 Wis. 522, 190 N. W. 359; *Boehm v. Wermuth,* 194 Wis. 82, 215 N. W. 818. Opinions filed by a trial court are very helpful in the consideration of questions subsequently raised in the case and are required by rule 1 of the rules of practice of this court to be made a part of every record and

transcript. It has always been held that in case of conflict between the opinion and the findings made pursuant to sec. 270.33, the findings must control. The rights of the defendants in this case seem to have been guarded most scrupulously. Proposed findings of fact and conclusions of law were submitted to counsel for defendants and counsel for defendants were given a hearing. This practice is in conformity with the suggestions of this court and in accordance with the practice indicated in sec. 270.33. This is not a case where the court has merely announced that it finds for the plaintiff and directs findings to be prepared. The proposed findings are charted or indicated in the opinion of the trial court, and while it is true that in the opinion no mention is made of bad faith, that subject was brought to the direct attention of the court by the objections filed by the defendants' attorneys. It is not there as a result of inadvertence on the part of the trial court. In view of the decisions and the procedure followed in this case, the attack upon the findings is not warranted.

The plaintiffs raise a fundamental question which requires careful consideration. The administrator was appointed and his bond approved October 13, 1927; judgment assigning the estate is dated June 10, 1929, or about one year and seven months after the appointment of the administrator. The bank closed on July 3, 1929.

Ch. 311, Stats., entitled "Letters of administration and administrators," sec. 311.05 (1), provides:

"Every administrator before he enters upon the execution of his trust and before letters of administration shall be granted to him, shall give a bond to the judge of the county court, with one or more sureties, as the court shall approve, with substantially the same conditions as are required of executors by section 310.14, with such variations only as may be necessary to make it applicable to the case of an administrator." . . .

Sec. 310.14 provides that every executor shall give a bond conditioned as follows: (a) to make and return an inventory; (b) to administer according to law all the goods and chattels of the testator; (c) to render a just and true account of his administration to the county court within one year; (d) to perform all orders and judgments of the county court.

Sec. 313.13 provides:

"Within sixty days after the expiration of the time limited for creditors to present their claims every executor or administrator shall render an account of his administration to the county court, and such court shall thereupon direct the executor or administrator to proceed forthwith to the payment of the debts and to a final settlement of the estate in the manner prescribed by law unless it shall satisfactorily appear to the court:

"(1) That the personal assets in the hands of the executor or administrator are insufficient, etc.

"(2) That an appeal has been taken, etc.

"(3) That collectible debts due the estate have not been collected.

"(4) That a contingent claim has been allowed against the estate of the deceased, etc.

"(5) That some other good and sufficient cause for delay exists."

Sec. 313.14 (1) provides:

"Whenever it shall satisfactorily appear to the county court that any one or more of the causes for delay mentioned in section 313.13 exists such court shall, by order, fix a time within which the executor or administrator shall pay the debts and legacies and make a final settlement of the estate and of his account as executor or administrator; but such time shall in no case exceed twelve months, except when granted upon the petition of the executor or administrator, under oath, setting forth the assets remaining in his possession belonging to the estate of the deceased, the debts and legacies that remain unpaid, the reasons why the delay in

the settlement of the estate prayed for is necessary, and what additional time is deemed requisite for a full settlement of such estate, and upon notice to all parties interested of the time and place of hearing such petition given by publication for three successive weeks before the day of hearing in a newspaper as provided in section 324.20, or in such other manner as the court may direct."

On behalf of the plaintiffs it is argued that the failure to account for and distribute the estate within one year, no petition for extension of time for cause having been filed or heard, is a breach of the administrator's bond and that any loss occasioned thereby is a liability of the administrator for which his bondsmen are responsible.

In *Shupe v. Jenks,* 195 Wis. 334, 218 N. W. 375, which was a suit upon an administrator's bond, the court said:

"In the ordinary course of events, an estate like the instant one could have been liquidated and settled before the expiration of one year. This is contemplated by the express wording of the statutes, and a personal representative is negligent in the performance of his duties if he either violates them or fails to apply to the court, upon sufficient grounds, for an extension of the time. For the violation of the duties of the defendant administrator and for his neglect as heretofore indicated, he and his sureties are responsible on the bond to the extent of the damage suffered by those interested in the estate."

To the same effect is *Probate Court v. Carr,* 20 R. I. 592, 40 Atl. 844; *Sanford v. Thorp,* 45 Conn. 241.

These statutes are not merely directory. It would be difficult to frame a statute more direct and positive in its terms: "But such time shall in no case exceed twelve months," except when a petition in accordance with the statute is filed and order of the court is made extending the time. Nor can the administrator or his bondsmen complain because of the failure to cite the administrator.

In dealing with a somewhat similar situation, the supreme court in *Probate Court v. Carr, supra,* after quoting the Rhode Island statute, said:

"But it is clear that this statute presupposes or assumes that the various steps in the settlement of the estate therein mentioned are to be taken in pursuance of a request from the administrator, whose duty it is to attend to all the details connected with the settlement of the estate. Indeed, we fail to see how the Probate Court could act intelligently upon any of the matters mentioned in said last-quoted section, without the aid of the administrator, as he only is in position to know the particular condition of the estate. . . . The court is not required to administer upon an estate, but only to act in a judicial capacity upon all such matters within its jurisdiction as are properly brought before it. The executor or administrator is the moving party and he is bound, at his peril, to seasonably move the court to take the necessary steps required in the settlement of the estate. And the defendant in this case having failed to discharge his plain duty in this regard, it comes with an ill grace from him to set up the flimsy excuse that the Probate Court did not of its own motion take action in the premises." See, also, *Davenport v. Richards,* 16 Conn. 310.

The material portion of the condition of the bond in this case is as follows: "And shall administer, according to law, all the goods, chattels, rights, credits and estate of said deceased." The statute very carefully and explicitly provides how the estate is to be administered and the time within which the administration must be completed. While subsequently the bond contains the provision: "And further shall render a true and just account of his administration to the county court aforesaid, within one year," that does not affect the statute nor make it any less the duty of the administrator to comply with the statute. Having given a bond to administer the estate according to law, if there is a conflict between the language of the bond and the statute, the statute must pre-

vail, the bond being given pursuant to statute and its condition being prescribed by the statute. The failure of the administrator to complete his administration within the time required by law, no extension having been granted for cause shown as required by statute, the bond of the administrator was breached and thereafter the risks were upon the administrator and his bondsmen.

While the contention of the plaintiffs respecting the liability of the administrator and his sureties must be sustained, that does not dispose of the case. Even if the administrator and his bondsmen are liable, there remains for consideration the question of whether or not that liability was discharged by the delivery of the checks under the circumstances established in this case and by reason of the conduct of the plaintiffs or any of them.

It is the contention of the defendants that the administrator was discharged so far as the claims of Etta M. Maynard and Medora Coolidge are concerned by reason of the fact that they failed to present checks for payment within a reasonable time as provided by sec. 118.62, Stats. What constitutes a reasonable time for presentation is a question of fact. Uniform Laws Anno. "Negotiable Instruments Act," pp. 491, 699. In the case of Etta M. Maynard, the facts are that the administrator issued a check on June 28, 1929, payable to her attorney, R. N. Nelson, who lived in the city of Madison, the check being issued upon the Farmers & Merchants Bank of Sun Prairie, Wisconsin, of which the administrator was cashier. On the same day Mr. Nelson indorsed the check and mailed it to his client at her home in Davidson, Michigan. The check was deposited by her in the Davidson State Bank, was cleared at the First Wisconsin National Bank at Milwaukee on July 5, 1929, the bank at Sun Prairie having closed its doors on July 3d, at noon. There is no showing as to the circumstances of Mrs. Maynard, whether she lived in a city where there was a

bank or in the country on a rural route or any other circumstance. Mr. Nelson, the drawee, did not deposit the check with any Madison bank.

The facts in regard to Medora Coolidge are that on June 25, 1929, the administrator caused to be issued to her his check upon the Sun Prairie bank, which was delivered to Mr. Riley, her attorney. He at once forwarded it to her at her residence in Redfield, South Dakota, where it should have been received about June 29th, but it was not presented before the failure of the bank upon which it was drawn.

At the time the bank closed its doors the administrator had on deposit in the bank the sum of $1,231.41 to the account of Nellie Jane Coolidge Estate, Rupert J. Batz, administrator. The situation of the parties to this transaction was well known to the administrator. The delay was such as not infrequently occurs in the transaction of business of this kind. In determining whether or not the drawer is discharged by reason of the failure of the drawee or indorsee to present a check within a reasonable time, all of the circumstances must be considered. Here it was well within the contemplation of the parties that the check to Etta M. Maynard would be indorsed and forwarded. The check to Medora Coolidge was issued directly to her and could be cashed only by forwarding it to her for her indorsement. Under all the facts and circumstances of the case, the trial court found that there was not an unreasonable delay. It cannot be said as a matter of law that an unreasonable time has elapsed merely because presentment was delayed for two or possibly three days, nothing being shown in regard to the circumstances of the parties to whom the checks were issued or indorsed. A rule has grown up requiring the payee to present a check before the close of the next business day where the bank is located in the place in which the payee lives, but that has no application here. In this case

upon the record the finding of the trial court must be sustained.

In the cases of George and Walter Coolidge the checks were left with their attorney, Alfred Bushnell, upon the understanding that he was to procure the signature of the distributees to receipts. This was by way of letter written by the administrator's attorney to Mr. Bushnell on June 17th. Upon the trial the receipt prepared for Walter W. Coolidge was produced but the date on which he signed it was left blank. The receipt of George Coolidge was also produced showing he signed same on July 1, 1929. How these circumstances can operate to discharge the drawer of the check is not apparent, and it must be held that the conclusion of the trial court that the drawer was not discharged was correct.

It was further contended that the administrator was discharged by reason of directions given to him by Walter and George Coolidge respecting certain certificates of deposit issued by the Farmers & Merchants Bank and two trust agreements issued by the Union Trust Company. The trial court found that when the bank closed the administrator had on deposit in cash subject to check the sum of $1,231.41; that at that time a part of the assets of the Nellie Jane Coolidge estate consisted of certificates of deposit issued by the Farmers & Merchants Bank, all being in the name of Walter W. Coolidge, one being in the sum of $200, one in the sum of $216, three in the sum of $100 each, and all bearing date December 10, 1928, and one in the sum of $270.48, bearing date March 6, 1929; that each and all of said certificates were issued to Walter W. Coolidge and were indorsed in blank by Walter W. Coolidge and delivered by him to the administrator; further, that at said time the administrator had in his possession as part of the assets of the estate of Nellie Jane Coolidge two trust notes of the Savings Loan and Trust Company of Madison, Wisconsin,

now known as the Union Trust Company, each in the principal sum of $100, both appearing on their face to be owned by Walter W. Coolidge, trustee; that none of the above named certificates nor two trust notes were ever converted by or placed in the name of Rupert J. Batz as administrator.

The court further found that about May 1, 1930, Rupert J. Batz, as administrator, filed a claim with said delinquent bank in the sum of $2,228.63, no part of which has been paid.

It appears without dispute that on August 7, 1929, Walter W. Coolidge wrote a letter to the Union Trust Company directing the Union Trust Company not to cash the two trust certificates if they were presented by Mr. Thomann, attorney for the administrator, and in that letter he stated: "I will take them back as part of my interest in her estate." This letter was written nearly six weeks after the bank closed. No one seems to have acted upon it. The only other testimony in the record is that of Mr. Thomann, attorney for the administrator. He testified:

"Mr. Bushnell told me that there were certain certificates of deposit or some form of instrument issued by the bank outstanding that were not in the deposit account, and also something from the Union Trust; I forgot whether they were trust certificates or some sort of bonds that were not to be cashed. That is, they wanted to preserve those because I believe there is some accrual of interest on them. At any rate, they told me that they would take those for their respective shares—Walter and George."

"Mr. Riley: I object to bringing Walter Coolidge into this conversation in any way. He is testifying as to a conversation between Mr. Nelson, and would also be subject to the objection previously made.

"Q. Are you telling now as to what Mr. Bushnell told you in answer to my question? A. Most of it, yes. I don't think Mr. Bushnell told me the form of the asset. I think that came from Mr. Coolidge himself. He had told me on several occasions about that thing.

"Mr. Riley: If the court please, I move that any reference to any conversation of Mr. Walter Coolidge, deceased, be struck from the record.

"The Court: Strike it out."

The offer of Walter Coolidge to accept the Union Trust Company documents on account of his share of the estate by letter written about six weeks after the failure of the bank seems to be established. However, there is no testimony that the offer was ever accepted, or for that matter that any one is in any way damaged by his failure to accept the documents. Striking out the testimony which relates to communications with the deceased Walter Coolidge, there is no evidence to sustain a finding that Walter and George agreed to accept certificates of deposit on the Farmers & Merchants Bank as any part of their share of their sister's estate.

No discharge was pleaded in the answer of the defendants nor does it seem to have been relied upon at the trial. In the answer it is alleged:

"That it was not by reason of any fault or failure or negligence on the part of said administrator that the said legacies were not paid in full, but rather was principally due to the reluctance of the said George and Walter Coolidge to receive payments of their legacies in cash, and was further due to the foreign residence of the other unpaid legatees, in whose cases time was lost in the transmittal of letters and receipts through the mails, and who further did not use due diligence in presenting the legacy checks forwarded to them within a reasonable time."

The administrator having failed to complete the administration within the time required by law, the risk was thereafter his risk and his default created a liability against his bondsmen. That liability not having been discharged, it was correctly held by the trial court that the plaintiffs were entitled to judgment.

*By the Court.*—Judgment affirmed.