**People of the State of Illinois ex rel. Cherry Valley Fire Protection District, a Public Corporation, Plaintiff-Appellant, v. City of Rockford, Illinois, Defendant-Appellee, Board of Education in and for the School District of the City of Rockford, No. 205, Winnebago County, Illinois, Intervening Defendant-Appellee.**

**Gen. No. 69–180.**

Second District.

May 7, 1970.

Philip G. Reinhard, State's Attorney, of Rockford, and H. Emmett Folgate, Special Assistant State's Attorney, for appellant.

John W. Nielsen, City Attorney, of Rockford, for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

The State's Attorney of Winnebago County filed a complaint in quo warranto on relation of the Cherry Valley Fire Protection District against the City of Rockford that challenged the annexation of certain property to the City. On July 8, 1969, the trial court denied judgment of ouster as sought in the complaint and entered judgment of justification and this appeal followed.

The territory in question is an irregular shaped parcel approximately 1¾ miles in length and includes 212 acres. On December 19, 1966, the territory was annexed to the City and on December 18, 1967, a quo warranto was brought by the State's Attorney on relation of the Rock River Library District and the Cherry Valley Fire Protection District. A judgment of ouster was entered on March 11, 1968, on the grounds that the City failed to furnish proper notice to the fire protection district as required by statute and that the territory was not contiguous to the City.

On April 9, 1968, the City annexed the identical territory covered by the judgment of ouster and one additional lot. For this purpose, the original petition for annexation was used together with a separate petition signed by the record owner of the added lot.

On November 29, 1968, a second complaint in quo warranto was brought on relation of Cherry Valley only and, after a hearing, the judgment of justification was entered.

In the interim between the hearings on the two complaints, one of the record owners on the original petition had conveyed his interest in a portion of the territory to a new owner. Neither the new owner nor the Board of Education of School District 205, the record owner of 125 acres of the territory had joined in either petition for annexation.

On appeal, the plaintiff contends that the annexation ordinance was void since it was not signed by all owners of record as required by section 7-1-8 of the Illinois Municipal Code (Ill Rev Stats 1967, c 24, § 7-1-8) ; that the territory was not contiguous to the City, and that the judgment of ouster entered on March 11, 1968, was res adjudicata on the issue of the validity of the annexation of the territory.

█ If we were to determine that the doctrine of res adjudicata had application as here urged, it would mean that this territory could never be annexed to the City of Rockford. However, as is well established, that doctrine has application only where there is an identity of parties, subject matter and cause of action. The earlier cause concerned itself with the issues of contiguity and the required notice to the fire protection district. It appears that notice was properly served prior to the second annexation ordinance and the inclusion of the additional lot significantly affected the question of contiguity. The issues presented to the court for determination in the

second quo warranto, thus, were not identical with those resolved in the earlier cause and the doctrine of res adjudicata was not applicable.

■ Prior to the inclusion of the added lot, the territory at one point was connected only by a street. Roadway annexations have been repeatedly held invalid as "corridor" or "strip" annexations that fail to meet the tests of contiguity as intended by the legislature. People ex rel. Village of Worth v. Ihde, 23 Ill2d 63, 69, 177 NE 2d 313; The People v. Village of Streamwood, 15 Ill2d 595, 601, 155 NE2d 635. We have recently held that the contiguity as contemplated by the legislature means "an actual touching in a reasonable physical sense." La Salle Nat. Bank v. Village of Burr Ridge, 81 Ill App2d 209, 218, 225 NE2d 33. The conclusion of the trial court that the addition of the crucial lot satisfied the statutory requirement of contiguity was not contrary to the manifest weight of the evidence and will not be disturbed.

However, we do not feel that it is necessary to consider the other matters raised by the plaintiff to dispose of this case for it is evident that the trial court based its decision on the doctrine of laches.

The application of the doctrine of laches to quo warranto suits brought on behalf of or in the name of the people was, until recently, in some doubt. However, in the case of People ex rel. Lindsey v. Board of Education, 3 Ill2d 159, 120 NE2d 887, the Supreme Court barred a quo warranto brought against a school board five years after its formation where the board had levied and collected taxes, disposed of school buildings, purchased buses and operated schools. The court stated at page 167 of that decision:

"The rule that laches is not usually applied against the State has been created for the benefit and protection of the public. It should not be reversed in

its purpose and applied where it results in public detriment and harm. The courts therefore should, in all quo warranto proceedings, consider all the circumstances of the case and where it appears that harm rather than benefit will be done to the public welfare, the application of laches against the public is justified."

In The People v. Junior College Dist. No. 526, 42 Ill2d 136, 139, 246 NE2d 292, the Supreme Court affirmed a judgment of the trial court that barred a quo warranto brought against a junior college district nearly two years after it was organized. The district had levied and collected taxes, leased land, hired teachers and enrolled students. The court held that where ". . . as a result of inexcusable delay and public acquiescence, a judgment of ouster would result in great public inconvenience and detriment, the public interest requires that laches be applied in bar of the proceeding."

We have recently stated, in People ex rel. Knaus v. Village of Hinsdale, 111 Ill App2d 368, 373, 250 NE2d 309, that "Quo Warranto is a high prerogative writ and courts in administering the remedy should proceed with due deliberation and caution and with the exercise of sound discretion, considering whether the public interest will be served or damaged by the writ and the necessity for and the policy of allowing the remedy."

In the instant case, the Board of Education that owned a substantial portion of the annexed territory was permitted to intervene. Evidence was introduced that the Board had purchased the land in three parcels, the last parcel in June of 1968.

In August of 1968, the Board retained an architectural firm to prepare detailed plans and drawings for the construction of a technical and vocational school on the site. Those plans were prepared on the assumption that the site was within the city limits and provided for the utili-

zation of various municipal services such as water, police and fire protection. The architect was paid $140,000 for his services and contracts awarded in April of 1969 for the construction of a vocational center at an estimated cost of $3,000,000. There was further evidence that construction had commenced and that in the event of an ouster the plans would have to be redesigned at considerable expense and that the school would not be completed by the autumn of 1970 as otherwise anticipated.

Cherry Valley maintains that the disconnection of the territory from the district as a result of the annexation will cause a serious loss in the assessed valuation available for the district and create other difficulties in its functions as a fire protection district. Section 38.3 of the State Fire Marshall Act (Ill Rev Stats 1967, c 127½, § 38.3) provides that a disconnection by law as a result of an annexation will not occur if the fire protection district files a petition with the appropriate court within 60 days of the date of the annexation. Despite the fact of notice of the annexation, Cherry Valley did not choose to exercise the remedies available under section 38.3 but waited for over 7 months to challenge the action of the city by way of quo warranto.

We are mindful of the fact that the reported cases in regard to the application of laches to public bodies in quo warranto proceedings involve circumstances of unquestionable public inconvenience and detriment.

It is uncontradicted that the Board of Education has expended considerable funds to acquire and develop their site within the territory on the assumption that it was a part of the City of Rockford and that further expense and inconvenience would result from an ouster. The public harm that would be thus experienced more than outweighs any possible loss to the relators. If Cherry Valley had brought a petition pursuant to the Fire Marshall Act within the required 60 days, much of the public detriment could have been avoided. In view of these considerations,

we feel that the trial court properly exercised its sound discretion within the limits expressed in People ex rel. Knaus v. Village of Hinsdale, supra, and that the judgment of July 8, 1969, should be affirmed.

Judgment affirmed.

DAVIS, P. J. and SEIDENFELD, J., concur.