CONCERNED CITIZENS OF SOUTH
KENAI PENINSULA and Mary Ann
McBride, Appellants,

v.

KENAI PENINSULA BOROUGH et al.,
Appellees.

No. 2239.

Supreme Court of Alaska.

Oct. 21, 1974.

448

Karl L. Walter, Jr., Groh, Benkert & Walter, Anchorage, for appellants.

John R. Strachan, Robison, McCaskey, Strachan & Hoge, and A. Robert Hahn, Jr., Hahn, Jewell & Stanfill, Anchorage, and Ben T. Delahay, Borough Atty., Kenai Peninsula Borough, Kenai, for appellees.

John R. Spencer, City Atty., City of Anchorage, Anchorage, for amicus curiae.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, Justices.

## OPINION

ERWIN, Justice.

Appellants are taxpayers who seek a dissolution of the South Kenai Peninsula Hospital Service Area. The service area was created in 1969 by Ordinance No. 69–4 of the Kenai Peninsula Borough Assembly to operate a hospital in the southwestern portion of the Borough. Delegation of assembly powers to the service area was approved by voters of the area on April 8, 1969. A hospital board was organized, and a fifty-five year lease was negotiated for operation of the former City of Homer hospital. Plans were laid for enlarging the facility, and on June 5, 1973, service area voters authorized issuance of $1,500,000 in bonds for construction of a new hospital. Thereafter, a federal grant and loan in the amount of $1,439,900 and a state grant of $1,723,100 were secured and an architectural design contract for the new structure was awarded.

On February 13, 1974, the complaint in this action was filed. Defendants then moved for summary judgment. In an oral ruling granting the motion, the superior court held that creation of the service area was not an arbitrary act denying due process of law; that the description set out in Ordinance No. 69–4 adequately designated the hospital district boundaries; and that laches barred plaintiffs' other claims that organization of the service area violated state statutes and constitutional provisions. Findings of fact prepared by defendants were then adopted. These omitted mention of laches and ruled on the merits against the plaintiffs on all issues.

On appeal appellants have again raised the questions of due process and definiteness in the boundary description and have also asked us to consider whether a service area can be formed which encompasses cities capable of providing the same service. This last issue was found by the superior court to be barred by laches. In addition, appellants have contended that the superior court did not require appellees to carry the burden of proving they were entitled to summary judgment. In response, appellees have resisted these claims and have reasserted the defense of laches.

Because circumstances required an immediate announcement of our decision, the judgment of the superior court was affirmed by order on July 2, 1974.[1] This opinion sets forth our reasons for the affirmance.

---

1. Appellees demonstrated that the availability of their federal hospital construction loan and grant could not be assured if this litigation were not terminated before July 15, 1974.

## I. SUMMARY JUDGMENT PRACTICE

Appellants argue that the superior court had before it no evidence which could have supported a decree of summary judgment. We do not agree. Appended to appellees' memorandum in support of their motion for summary judgment were photocopies of Borough resolutions and ordinances, sample ballots, election canvass reports, and constitutional and statutory provisions. In addition, at the time the court ruled on the motion, the record included amended pleadings and sworn answers to interrogatories propounded by both sides.

■■■ A party seeking summary judgment under Civil Rule 56[2] has the burden of showing both that the case presents no material issue of fact requiring the taking of testimony and that applicable law requires judgment in its favor.[3] This burden must be discharged by submission of material admissible as evidence.[4] Assertions of fact in pleadings and memoranda, unauthenticated and unsworn documents, and uncertified copies of public records are not admissible in evidence and cannot be relied upon for the purposes of summary judgment.

■■■ None of the exhibits appended to appellees' memorandum were sworn, certified or authenticated documents. However, both Ordinance No. 69-4[5] and Supreme Court Order No. 12[6]—the only documents essential to the court's decree— were judicially noticeable under Civil Rule 43(a)(3).[7]

---

2. Alaska R.Civ.P. 56 provides in pertinent part:

(b) *For Defending Party.* A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move for a summary judgment in his favor as to all or any part thereof.

(c) *Motion and Proceedings Thereon.* The motion shall be served at least 10 days before the time fixed for the hearing, and may be supported by affidavits setting forth concise statements of material facts made upon personal knowledge. There must also be served and filed with each motion a memorandum showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The adverse party not later than two days prior to the hearing may serve opposing affidavits, a concise "statement of genuine issues" setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, and any other memorandum in opposition to the motion. Judgment shall be rendered forthwith if the pleadings, depositions and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages. Summary judgment, when appropriate, may be rendered against the moving party.

(e) *Form of Affidavits—Further Testimony—Defense Required.* Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

3. Braund, Inc. v. White, 486 P.2d 50, 53-54 (Alaska 1971). *See* Whaley v. State, 438 P.2d 718, 720 (Alaska 1968).

4. Miller v. City of Fairbanks, 509 P.2d 826, 829 (Alaska 1973); Braund, Inc. v. White, 486 P.2d 50, 54 N. 5 (Alaska 1971).

5. Note 15 *infra.*

6. Note 23 *infra.*

7. In their supporting memorandum, the appellees requested judicial notice.
Alaska R.Civ.P. 43 provides in part:
(a) *Judicial Notice.*

While judicial notice permitted taking the essential facts as true without formal proof, the superior court ignored important procedural requirements of Rule 43. Preliminary to judicial notice, the court must announce its intentions to the parties and indicate for the record the particular facts to be taken as true.[8] This allows the parties to test both the propriety of noticing any fact and the truth of the matter to be established.[9]

■ The superior court neither notified the parties nor identified for the record the documents to be relied upon. This was a violation of Civil Rule 43(a)(5). Never-

theless, we are convinced that in this case the error was harmless. On no occasion did appellants argue that the photocopies were inaccurate or that the original public records had been altered.[10] Even though the superior court did not observe proper procedure in taking judicial notice, its omission did not cause a failure of proof. In this setting, Civil Rule 61[11] requires that we treat the error as harmless.[12] Accordingly, we reject appellants' claim that no cognizable documents at all were before the superior court. Not only were the essential public records subject to judicial notice, there was also a variety of sworn facts in the record.

---

(2) *Without Request—Optional.* Without request by a party, the court may take judicial notice of:

[a] Private acts and resolutions of the Congress of the United States and of the legislature of this state, and duly enacted ordinances and duly published regulations of governmental subdivisions or agencies of this state.

. . . . .

(3) *On Request.* Upon the request of a party, the court shall take judicial notice of each matter specified in (2) of this subdivision if the requesting party furnishes the judge sufficient information to enable him properly to comply with the request and has given each adverse party such notice as the judge may require to enable the adverse party to prepare to meet the request.

(4) *Determination of Propriety.*

[a] The judge shall afford each party reasonable opportunity to present to him information relevant to the propriety of taking judicial notice of a matter or to the tenor of the matter to be noticed.

[b] In determining the propriety of taking judicial notice of a matter or the tenor thereof, the judge may consult and use any source of pertinent information, whether or not furnished by a party, and no exclusionary rule except a valid claim of privilege shall apply.

. . . . .

(5) *Instructing the Trier of Fact.* If a matter judicially noticed is other than the common law or constitution or public statutes of this state, the judge shall indicate for the record the matter which is judicially noticed and if the matter would otherwise have been for determination by a trier of fact other than the judge, he shall instruct the trier of the fact to accept as a fact the matter so noticed.

8. Lemon v. State, 522 P.2d 160, 162 (Alaska 1974) ; Alaska R.Civ.P. 43(a)(5) at note 7 *supra.*

9. Alaska R.Civ.P. 43(a)(4) at note 7 *supra*; C. McCormick, Law of Evidence § 330, at 708 (1954).

10. In opposing the motion for summary judgment, appellants made a broad objection on the ground that the photocopies appended to appellees' memorandum had not been authenticated.

Plaintiffs have not had the opportunity to verify all the documents sought, and the propriety of such exhibits should be determined by this court only after the Plaintiffs have had full opportunity to verify the admissibility of the exhibits.

In the two months which transpired between filing of the motion and its disposition, a period of active discovery by both parties, appellants made no further indication to the court or the appellees that they believed any particular photocopy to be inaccurate.

11. Alaska R.Civ.P. 61 states:

So error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

12. *See* United States v. 1,078.27 Acres of Land, 446 F.2d 1030, 1034 (5th Cir. 1971).

This brings us to the central question of whether these facts establish the absence of any material issue of fact and show that the appellees are entitled to judgment as a matter of law.

## II. DUE PROCESS

Appellants' due process claim arises from their assertion that as many as thirty-five per cent of patients at the service area hospital have been residents of communities outside the hospital service area. They argue that this shows an arbitrary and capricious exclusion of a substantial percentage of consumers from the service area denying them due process of law.

■■ Substantive due process is denied when a legislative enactment has no reasonable relationship to a legitimate governmental purpose.[13] It is not a court's role to decide whether a particular statute or ordinance is a wise one; the choice between competing notions of public policy is to be made by elected representatives of the people. The constitutional guarantee of substantive due process assures only that a legislative body's decision is not arbitrary but instead based upon some rational policy.

■ A court's inquiry into arbitrariness begins with the presumption that the action of the legislature is proper.[14] The party claiming a denial of substantive due process has the burden of demonstrating that no rational basis for the challenged legislation exists. This burden is a heavy one, for if any conceivable legitimate public policy for the enactment is apparent on its face or is offered by those defending the enactment, the opponents of the measure must disprove the factual basis for such a justification.

■ When a due process claim is tested by a motion for summary judgment, the existence of facts known to the court which provide such a rational basis is sufficient by itself to establish that the statute or ordinance is not arbitrary, so long as the opponents of the legislation do not assert the contrary of those facts.

■ In the instant case, the borough assembly was aware that hospital facilities already existed in Seldovia. The superior court could reasonably have concluded that this fact provided a rational basis for the assembly's decision to exclude the Seldovia region from the service area. The burden then fell on appellants to demonstrate the lack of any rational basis in these facts. Yet, in response to the motion for summary judgment, no evidence tending to show that the drawing of boundaries was capricious was offered; appellants urged instead the erroneous proposition that appellees were required to prove that the ordinance was not arbitrary. A bare assertion that due process has been denied is not enough to withstand summary judgment. Appellants failed to show how the ordinance denied them substantive due process, and the superior court correctly granted summary judgment on the issue for appellees.

## III. BOUNDARY DESCRIPTION

Ordinance No. 69–4 attempted to set out the boundaries of the service area by describing the southwestern portion of the Borough and then purporting to exclude from its area a section of the Kenai Peninsula lying south of Kachemak Bay.[15] Appellants contend that the description of the excluded area is so ambiguous and indefinite that the ordinance must be declared

13. Mobile Oil Corp. v. Local Boundary Comm'n, 518 P.2d 92, 101 (Alaska 1974).

14. *See* Leege v. Martin, 379 P.2d 447, 452 (Alaska 1963); DeArmond v. Alaska State Dev. Corp., 376 P.2d 717, 721 (Alaska 1962).

15. The ordinance states in pertinent part:
AN ORDINANCE ESTABLISHING THE SOUTH KENAI PENINSULA HOSPITAL SERVICE AREA AND PROVIDING FOR AN APPOINTED HOSPITAL BOARD.
WHEREAS, the Assembly finds that hospital services are needed within the South

invalid and the hospital service area dissolved.[16]

Peninsula area and that such services can best be provided by the establishment of a service area or city or by the incorporation better provided by annexation to another service area or city or by the incorporation of a city.

BE IT ORDAINED BY THE ASSEMBLY OF THE KENAI PENINSULA BOROUGH:

*Section 1.* Title 27 of the Kenai Peninsula Borough Code of Ordinances is amended to add this new chapter to read:

### CHAPTER 20. SOUTH KENAI PENINSULA HOSPITAL SERVICE AREA

Section 27.20.010. *Boundaries.* There is hereby established pursuant to AS 07.15.050 a service area within the borough designated the "South Kenai Peninsula Hospital Service Area", including that portion of the borough described as follows:

As a point of beginning, begin at the N.W. corner of T1S, R25W (projected), Seward Meridian, State of Alaska;

THENCE East along Seward baseline to a point in Cook Inlet and 3 miles offshore on the west side of Cook Inlet;

THENCE northeasterly to a point of intersection with Township line between T1N, T2N and 3 miles offshore in Cook Inlet on the east side of Cook Inlet;

THENCE East along Township line between T1N and T2N to an intersection with the boundary line between election district numbers 9 and 10: [sic]

THENCE in a southerly direction along the boundary between election district numbers 9 and 10, to the S.E. corner of the N.E. ¼ of Sec. 28, T11s, [sic] R10W (projected), said corner being at or approximately at Gore Point;

THENCE southwesterly to the S.E. corner of the N.E. ¼ of Sec. 27, T12S, R13W (porjected), [sic] said corner being on or approximately on the southerly point of East Chugach Islands;

THENCE southwesterly to the S.E. corner of Sec. 31, T12S, R14W (projected), said corner being at or approximately at Perl Rock;

THENCE southwesterly to longgitude [sic] 153°00′00″W. latitude 59°02′00″N., in Cook Inlet;

THENCE southwesterly to the N.E. corner of Sec. 27, T15S, R24W (projected), at Cape Douglas on the West Side of Cook Inlet;

THENCE West to the N.E. corner of Sec. 29, T15S, R26W (projected);

THENCE South to the S.E. corner of Sec. 32, T16S, R26W (projected);

There is no doubt that the boundary description in Ordinance No. 69–4 is incom-

THENCE West to the N.E. corner of T17S, R28W (projected);

THENCE South to the S.E. corner of T17S, R28W (projected);

THENCE West to the S.W. corner of T17S, R32W (projected);

THENCE North to the N.W. corner of T17S, R32W (Projected( [sic];

THENCE West to the S.W. corner of T16S, R32W (projected);

THENCE North to the N.W. corner of T13S, R32W (projected);

THENCE West to the S.W. corner of T12S, R32W (projected);

THENCE North to the N.W. corner of T11S, R32W (projected);

THENCE East to the S.W. corner of T10S, R30W (projected);

THENCE North to the N.W. corner of T9S, R30W (projected);

THENCE East to the S.E. corner of T8S, R29W (projected);

THENCE North to the N.E. corner of T8S, R29 W [sic];

THENCE East to the N.E. corner of T8S, R28W (projected);

THENCE North to the N.W. corner of T6S, R27W (projected);

THENCE East to the S.W. corner of T5S, R26W (projected);

THENCE North to the N.W. corner of T5S, R26W (projected);

THENCE East to the S.W. corner of T4S, R25W (projected);

THENCE North to the N.W. corner of of T1S, R25W (projected);

THENCE East to the point of beginning, EXCEPTING therefrom that portion of Seldovia recording district lying south of a line which follows easterly along the mainland and the shore of China Poot Bay;

THENCE along the left and west bank of the Doroshin River to its source;

THENCE east [sic] to the summit of the watershed dividing the waters flowing in [sic] the Gulf of Alaska from the waters flowing into Kachemak Bay.

. . . . .

The final three paragraphs, beginning with "EXCEPTING", comprise the portion of the description which appellant contend is defective.

16. Their claim is illustrated by argument that indefiniteness has made it impossible to determine who was entitled to vote in past service area elections as well as who is subject to service area tax levies. Appellants do not, however, directly allege that any of their number has been denied the right to vote or taxed without authority.

plete. The final three paragraphs purport to exclude an area south of a line following the southern shore of Kachemak Bay, but the description does not set out the point at which the line begins. The question which we address is whether the superior court correctly concluded that this description could be made definite by reference to other documents.

■ An ordinance expresses the legislative will of a borough. If its language is ambiguous or incomplete, an ordinance is to be construed on the same principles as a statute,[17] the primary rule being that a court should endeavor to ascertain and give effect to the intention of the legislative body.[18] The record in this litigation demonstrates a clear intent to exclude the Seldovia Recording District from the hospital service area. The minutes of the borough assembly meeting on February 4, 1969, state:

> There was consideration of two ordinances. One to include Seldovia, English Bay, and Port Graham, and one to exclude this area.

> Assemblyman Pace reported that he had been directed by the City Council to

object to introduction of an ordinance to include the Seldovia Recording District. The City Council voted unanimously last Tuesday to object to inclusion in the southern hospital service district. Seldovia owns their own hospital and the people cannot see where the service area will help them overcome their problems and the residents believe that . . . being included in the service area would only add additional tax burdens.

■ We see no impediment to examining these minutes to determine the assembly's intent because they appear in the record as part of the sworn Answers to Plaintiffs' Interrogatories. While Civil Rule 56(c) does not expressly provide for a trial court's consideration of answers to interrogatories in deciding a motion for summary judgment,[19] a central policy of Civil Rule 56(c)—assuring that a summary judgment is based upon facts admissible in evidence [20]—is consistent with relying upon sworn answers to interrogatories along with any other materials otherwise admissible in evidence.[21]

■ These minutes were not appended to appellees' motion for summary

---

We have concluded that their intention is not to urge the rights of unrepresented third parties but to assert their own right to be free from arbitrary legislation. The contrary conclusion would raise serious questions of their standing to sue.

17. Lane County v. R. A. Heintz Const. Co., 228 Or. 152, 364 P.2d 627, 629–630 (1961); Sandona v. City of Cle Elum, 37 Wash.2d 831, 226 P.2d 889, 892 (1951); 2 J. Sutherland, Statutory Construction § 3905, at 273 (3d ed. 1943). *See* Guidoni v. Wheeler, 5 Alaska 229 (1915), aff'd, 230 F. 93, 4 Alaska Fed. 369 (9th Cir. 1916).

18. Femmer v. City of Juneau, 97 F.2d 649, 656, 9 Alaska 315, 332, (9th Cir. 1938); United States v. R & J Enterprises, 178 F. Supp. 1, 4 (D. Alaska 1959); United States v. Hardcastle, 10 Alaska 254, 266 (1942). *See* State v. American Can Co., 362 P.2d 291, 296 (Alaska 1961).

19. See note 2 *supra.*

20. This is in conformity with the federal practice:

The materials which the court is entitled to consider at the hearing on the motion for summary judgment are: the pleadings; affidavits which meet the testimonial requirements of Rule 56(e); depositions; *answers to interrogatories;* admissions; oral testimony; documentary and other evidentiary materials. (footnotes omitted; emphasis added)

6 Moore's Federal Practice § 56.15 [8], at 2438 (1974). Miller v. City of Fairbanks, 509 P.2d 826, 829 (Alaska 1973); Braund, Inc. v. White, 486 P.2d 50, 54 n. 5 (Alaska 1971).

21. 6 Moore's Federal Practice § 56.11 [5], at 2195–97 (1974).

Alaska's Civil Rule 56 was modeled upon the corresponding federal rule of civil procedure in effect in 1960. The federal rule enumerated depositions, admissions on file, and affidavits as among the sources a trial court could draw from to decree summary judgment, but failed to list answers to interrogatories. Notwithstanding the omission, federal courts and other jurisdictions using

judgment, but it is unnecessary that the superior court's attention be directed to particular answers to interrogatories in the record. Generally, however, where a party intends to rely upon answers to interrogatories as a basis for summary judgment, he should notify the court and opposing counsel to permit an opportunity to challenge the factual basis for the answers. In this case there was no error in appellees' failure to specify the answers to interrogatories to be relied upon because of the circumstances pointed out in note 10 *supra* and because the material relied upon was supported by documents, the veracity of which depended upon public records which appellants were invited to inspect some 45 days prior to the granting of summary judgment.

Appellees also requested the superior court to read Ordinance No. 69–4 together with boundary descriptions in other public documents, including Supreme Court Order No. 12, establishing recording districts for the state and defining their geographical boundaries. The disputed portion of Ordinance No. 69–4 describes a portion of the boundaries of the Seldovia Recording District in language nearly identical to Order No. 12.[22] Undoubtedly, the draftsman of the ordinance relied upon the order for the geographical description of the excluded area. Had the first three clauses of that description been included as well, the ordinance description would have been complete.

 We believe that the boundary designation in Ordinance No. 69–4 sufficiently describes the limits of the hospital service area when read in light of the borough assembly minutes. The defect in the description is not an inaccuracy but an omission of a series of calls necessary to exclude the area intended. We are not faced with the difficult question of which of two monuments or distances is contemplated by ambiguous language. Here there are no competing alternatives; there is only evidence that the description was incomplete, that a portion of Order No. 12 was the language omitted, and that the borough assembly intended that language to be a part of the ordinance. Where there is such clear indication of the assembly's intent as the minutes provide, ambiguity caused by incompleteness rather than inaccuracy can be readily resolved. We are able to ascertain the assembly's intent and give effect

---

similar rules of procedure were nearly unanimous in holding that answers to interrogatories could be utilized in summary judgment practice. *See* American Airlines v. Ulen, 87 U.S.App.D.C. 307, 186 F.2d 529, 531–532 (1949), and the cases cited in Annot., 74 A.L.R.2d 984 (1960); *contra* Town of River Junction v. Maryland Cas. Co., 110 F.2d 278, 283 (5th Cir. 1940).

"[A]nswers to interrogatories" was added to Federal Rule 56(c) by amendment in 1963. The accompanying note by the Advisory Committee observed that omission of the phrase had been inadvertent. 28 U.S.C.A. Rule 56, at 416 (1971). *Cf.* E. H. Marhoefer, Jr., Co. v. Mount Sinai, Inc., 190 F.Supp. 355, 359 (E.D.Wis.1961).

22. Supreme Court Order No. 12, at 50–51 (rev.1964) states:

SELDOVIA DISTRICT

Said district shall encompass all the territory within the following described boundaries:

Beginning at Cape Douglas on the north shore of Shelikof Strait, running thence northeasterly to a point in the center of Cook Inlet at 152°20′ west longitude and 59°40′ north latitude; thence in a southeasterly direction to a point in the center of Kachemak Bay directly south of the point of land of the Homer Spit; thence south to the mainland; *thence easterly along the mainland and the shores of China Poot Bay to the left and west bank at the mouth of the Doroshin River where it empties into China Poot Bay; thence along the left and west bank of the Doroshin River to its source; thence east to the summit of the watershed dividing the waters flowing into the Gulf of Alaska from the waters flowing into Kachemak Bay;* thence southerly along said summit to a point three miles south of Point Gore; thence south and westerly in a circuitous line midway between the Barren Island and the southern extremity of the Chugach Islands to a point south of Cape Elizabeth; thence southwesterly to Cape Douglas the point of beginning. (emphasis added)

Compare the emphasized language with the last three paragraphs in note 15 *supra*.

to it from the facts in the record. Accordingly, we affirm the superior court's decree of summary judgment for appellees on this issue.

## IV. LACHES

The remainder of appellants' claims were held by the superior court to be barred by their delay in bringing this action. This ruling is questioned on appeal by appellants' assertion that including cities with hospital powers within the service area was unlawful.

Appellants have not addressed themselves to whether delay in filing suit should foreclose consideration of their claim because they believe the superior court did not reach such a conclusion. The transcript of the court's ruling shows the contrary. After deciding the due process and boundary description issues adversely to appellants, the court ruled that all issues surrounding dissolution of a prior public utility district and organization of the service area were barred by plaintiffs' long delay in instituting suit.[23] Following this

oral ruling, the court was pressed by appellees to limit the time allowed to file a notice of appeal, because the litigation had to be resolved promptly lest appellees' federal grant and loan be lost. The court was powerless to expedite the appeal, but it did assist appellees by immediately adopting their proposed findings of fact.[24]

These findings recited the passage of Ordinance No. 69–4 and dissolution of the prior public utility district. The conclusions of law held the ordinance lawful and its boundary description sufficiently definite. There was no mention of other issues appellants had raised with respect to organization of the service area, and nowhere was the defense of laches mentioned.

Where there is a variance between a court's oral ruling on a motion for summary judgment and written findings prepared by the prevailing party, the oral ruling controls.[25] Civil Rule 52(a) does not generally require findings of fact or conclusions of law following decision on a mo-

23. A transcription of the pertinent part of the superior court's ruling reads:

> [G]oing now to the question of the PUD, whether it was dissolved, and the matter of the establishment of this service area, it's been since 1969; now it's 1974. And this issue is now being raised collaterally in this proceeding. I hold that the parties are estopped because of the fact that it's been operating as a de facto governmental area. The parties are estopped . . . from [contesting] the dissolution of the PUD and . . . the establishing of this area . . . since it's an unreasonable time . . . which they have waited . . . to raise this matter.

Although the judge referred to the de facto existence of the service area, we believe he did not intend to apply a variation of the doctrine of de facto municipal incorporation. *Compare* Port Valdez Co., Inc. v. City of Valdez, Op. No. 1044, 522 P.2d 1147, at 1152–1156 (Alaska 1974); United States Smelting, Refining & Mining Co. v. Local Boundary Comm'n, 489 P.2d 140, 144 n. 15 (Alaska 1971). The doctrine of de facto municipal incorporation does not address a plaintiff's delay in filing suit. It requires only that there be

(1) a constitutional or statutory provision under which the annexation might lawfully have been accomplished; (2) an attempted compliance in good faith with the provision(s); (3) a colorable compliance with the provision(s); and (4) an assumption in good faith of municipal powers over the annexed territory. Port Valdez Co., Inc. v. City of Valdez, Op.No.1044, 522 P.2d 1147 at 1154 (Alaska 1974).

None of the elements of de facto municipal incorporation were argued by the parties in this suit. The appellees emphasized appellants' delay in filing suit, and it was this fact which became the basis for the court's ruling that laches applied.

24. The court stated:

> [F]or the purpose of expediting this . . . I will adopt . . . the proposed findings of fact and conclusions of law submitted by the defendants . . . . I did want to give my oral opinion on the matter to supplement this, but I think . . . that I can adopt your proposed findings.

25. *See* City of Anchorage v. Steward, 374 P. 2d 737, 739 (Alaska 1962), for discussion of conflicts between oral decision and findings after trial.

tion for summary judgment.[26] Findings are helpful but not binding on review, and where they vary from the court's actual ruling, they must be disregarded.

■ The question before us then is whether the trial court erred when it applied the defense of laches. The doctrine creates an equitable defense when a party delays asserting a claim for an unconscionable period. A court must find both an unreasonable delay in seeking relief and resulting prejudice to the defendant.[27] Sustaining this defense requires a decision by the trial court that the equities of the case justify refusal to hear and decide a party's claim. It is an act of discretion which will not be interfered with unless we feel a definite and firm conviction that a mistake has been committed.[28]

■ No specific time must elapse before the defense of laches can be raised because the propriety of refusing to hear a claim turns as much upon the gravity of the prejudice suffered by the defendant as the length of a plaintiff's delay. Where harm to the defendants would be great, as in a belated attack upon local government, a plaintiff's delay in asserting his claim need not be extreme.[29] In a different context, we emphasized the harm which may follow from disestablishing a unit of local government:

Disincorporation of a municipality substantially disrupts the life and livelihood of anyone associated with the municipality. Among the deleterious consequences of a disincorporation are the diselection of public officials, invalidation of corporate actions (possibly creating individual liability on the part of public officials or unjustly depriving employees, contractors and other creditors of claims against the corporate body), and voiding of actions taken under the police, taxation and eminent domain powers.[30]

Disannexation or disincorporation of a municipality is not at issue here. Nevertheless, disestablishment of a hospital service area after it has been in active existence for five years would cause disruption and injury of the same order.

■ Appellants' claims arose in April, 1969, when voters of the area approved the Borough's delegation of hospital powers. Since July 1, 1969, the service area has maintained a hospital operating on an average annual budget, derived in part from property taxes, of $205,000. The hospital serves the entire southwestern portion of the Kenai Peninsula Borough. A new hospital is now contemplated, bonds have been authorized for its construction and more than $60,000 has been expended for architectural design and other services.[31]

26. Alaska R.Civ.P. 52(a) provides in part:
 Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b).
 This sentence emphasizes that Rule 52(a) is addressed to "all actions tried upon the facts without a jury or with an advisory jury . . . ." Summary judgment rests in part upon the conclusion that there are no facts to be tried. Although findings are unnecessary, we welcome a judge's statement of the reasons for his decision.

27. E. g., Pioneer Mining Co. v. Pacific Coal Co., 4 Alaska 463, 473–474 (1912), aff'd, Pacific Coal and Transp. Co. v. Pioneer Mining Co., 205 F. 577, 4 Alaska Fed. 115 (9 Cir., 1913).

28. See Alaska Placer Co. v. Lee, 502 P.2d 128, 132 (Alaska 1972) ; Gravel v. Alaskan

Village, Inc., 423 P.2d 273, 277 (Alaska 1967).

29. See, e. g., People ex rel. Cherry Valley Fire Protection Dist. v. City of Rockford, 122 Ill. App.2d 272, 258 N.E.2d 577. 580 (1970). Compare AS 29.18.150 which provides:
 Challenge of legality: No person may challenge the formation of a municipality except within six months of the date of its incorporation.

30. Port Valdez Co., Inc. v. City of Valdez, Op.No.1044, 522 P.2d 1147, at 1153 (Alaska 1974) (holding that annexations may be immune to private suit under the defacto municipal incorporation doctrine).

31. These facts are to be found in sworn answers to appellants' interrogatories.

All the claims which appellants attempted to argue before the superior court could have been asserted in April, 1969. Yet a complaint was not filed until February, 1974, four years and ten months later. On these facts, we do not believe the superior court abused its discretion in finding appellants' claim barred by laches.[32]

The judgment of the superior court is affirmed.

BOOCHEVER, J., concurring, with whom RABINOWITZ, C. J., joins.

BOOCHEVER, J., concurring, with whom RABINOWITZ, C. J., joins.

I concur with Justice Erwin's opinion but do not agree that "[w]here there is a variance between a court's oral ruling on a motion for summary judgment and written findings prepared by the prevailing party, the oral ruling controls." The written findings and conclusions should be the product of greater deliberation, and the general rule is that where formal findings of fact and conclusions of law filed pursuant to statute conflict with statements of fact made in an opinion or memorandum of decision, the formal findings prevail.[1] However, facts stated in a memorandum that are not inconsistent with the findings may be considered as incorporated in those findings.[2]

While I believe that generally the written findings and conclusions should control, I do not regard such a rule as one that must be slavishly followed in all cases. The circumstances under which the findings are filed may be considered when appropriate.[3]

Here there was no inconsistency between the judge's oral decision based on laches and the written findings and conclusions. For the reasons that findings are not required in granting a summary judgment, that the judge signed the particular findings involved in an understandably hurried manner and that he expressly stated that he wished to supplement them by his oral opinion, I concur in the affirmance on the basis of laches.

32. We recognize that appellants' claim has its basis in the Alaska Constitution. Article X, section 5, prohibits service areas within organized boroughs if "the new service can be provided by an existing service area, by incorporation as a city, or by annexation to a city." Nevertheless, we believe that in a contest over the validity of a unit of municipal government, laches can be raised as a defense to such a claim. The legislature has expressed an analogous policy in enacting AS 29.18.150, note 30 *supra*, which prohibits any challenge to the formation of a municipality except within six months of the date of its incorporation.

1. Dept. of Social Welfare v. Machado, 98 Cal. App.2d 364, 220 P.2d 411 (1950); Levine v. Randolph Corp., 150 Conn. 232, 188 A.2d 59 (1963); Woodson v. Reynolds, 42 N.M. 161, 76 P.2d 34 (1938); State v. Kay, 164 Wash. 685, 4 P.2d 498 (1931); Coolidge v. Rueth, 209 Wis. 458, 245 N.W. 186 (1922).

2. Wilson v. Davidson, 219 Minn. 42, 17 N.W. 2d 31, 34 (1944).

3. See City of Anchorage v. Steward, 374 P. 2d 737 (Alaska 1962). The circumstances whereby the trial judge orally espoused an erroneous theory of law in reaching his decision were such that we could not escape the belief that his initial decision was based on that error and that his subsequent signing of a counsel presented order did not reflect his true position in deciding the case so that justice required that the case be retried. The judge involved retired for reasons of health a short time after signing the order involved, and prior to our decision in requiring a new trial.