Charley R. WAMSER, Appellant,

v.

STATE of Alaska, Appellee.

No. 7348.

Court of Appeals of Alaska.

Nov. 25, 1983.

Charles G. Evans, Smith & Gruening, Inc., Anchorage, for appellant.

Paul E. Olson, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

BRYNER, Chief Judge.

Charley R. Wamser was convicted of fishing commercially without required number

plates on his vessel and of fishing in closed waters. On appeal, Wamser challenges only his conviction for fishing in closed waters. Wamser raises a number of interrelated issues. We affirm.

Wamser's principal argument is that the trial court improperly applied Alaska Rule of Evidence (A.R.E.) 201 by taking judicial notice of the basic principles underlying use of the Loran C navigational system. Prior to his trial, Wamser received a letter indicating that Superior Court Judge Victor D. Carlson intended to take judicial notice of certain basic facts relating to Loran C navigation. Specifically, Judge Carlson indicated his intent to rely on a memorandum of judicial notice entered by Superior Court Judge J. Justin Ripley in four unrelated cases, which also involved charges of unlawful commercial fishing in the Bristol Bay area. In the prior cases, Judge Ripley considered expert testimony about the scientific principles underlying the Loran C system of navigation and the use of that system in the Bristol Bay area. Based on the testimony, Judge Ripley concluded that it was appropriate to take judicial notice of the general validity of the scientific principles underlying Loran C navigation and of the reliability and accuracy of the system, assuming all equipment was functioning properly.[1]

Prior to his trial, Wamser filed a motion to prevent Judge Carlson from taking judicial notice of any facts relating to Loran C navigation. Wamser also moved to suppress all evidence based on use of the Loran C in his case. After hearing argument, Judge Carlson ruled that he would take judicial notice of the scientific principles involved in the Loran C system. Judge Carlson also denied Wamser's motion to suppress. Wamser now maintains that the use of judicial notice in his case was inappropriate. We disagree.

Based upon our review of the expert testimony originally heard by Judge Ripley, we conclude that the basic validity and general acceptance of the scientific principles underlying the Loran C navigational system are facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be disputed." A.R.E. 201(b)(2).

Here, Wamser was provided ample advance notice of Judge Carlson's intent to take judicial notice and of the evidentiary base upon which the judge intended to rely. *See Concerned Citizens v. Kenai Peninsula Borough,* 527 P.2d 447, 451 (Alaska 1974). Wamser was also afforded a hearing as to the propriety of taking judicial notice in his case. He failed to establish, either by evidence or offer of proof, that the facts Judge Carlson intended to take judicial notice of were subject to reasonable dispute or incapable of being readily ascertained by resort to sources whose accuracy could not reasonably be disputed.

We are convinced that Judge Carlson's use of judicial notice in this case was not unduly broad and did not improperly restrict Wamser's rights to full and effective confrontation on cross-examination. Judge Carlson made it clear that he would take judicial notice of the scientific principles underlying Loran C navigation only to a limited extent. The judge specifically indicated that the state would be required to establish, as a foundational requirement, that its witness was reasonably qualified to operate a standard Loran C receiver and that the receiver actually used in the case was functioning properly at the time of the offense. Judge Carlson also indicated that Wamser would be entitled to challenge the

---

1. Judge Ripley's memorandum of judicial notice provided, in relevant part:

IT IS JUDICIALLY NOTICED AND ESTABLISHED IN THESE PROCEEDINGS THAT:

1. The physical, electronic and cartographic principles underlying the transmission, reception and plotting of Loran C information are well established and verified by scientific inquiry so that their accuracy is not questioned; and

2. If the Loran C receiver operator is familiar with the function of his equipment, if his equipment is functioning normally and in accordance with its instruction manual, the location information received is accurate.

accuracy of any Loran C reading actually obtained in his case.

At trial, fish and game officer Joseph W. Campbell was the only witness to testify for the state. Officer Campbell stated that, on June 10, 1982, while he was patrolling in closed waters just south of the King Salmon line, he spotted Wamser's boat with its nets in the water. By looking at a bell buoy and beach markers, Officer Campbell determined that Wamser's boat was in closed waters, about one-half mile south of the King Salmon line. Campbell testified that his visual observation was confirmed by his Loran C reading. Campbell testified about his experience operating Loran C receivers and about various factors indicating the accuracy of the Loran C reading that he received for Wamser's vessel.

Wamser strenuously argues that Judge Carlson restricted the scope of cross-examination concerning Officer Campbell's training and the accuracy of the Loran C reading he actually obtained. The record does not support Wamser's claim. Judge Carlson gave Wamser ample latitude to cross-examine Officer Campbell as to his experience and qualifications in operating a Loran C receiver. The judge also allowed Wamser to question Officer Campbell about the accuracy of the Loran C receiver on board his vessel and the accuracy of the Loran C reading that he obtained at the time of the offense. Judge Carlson sustained objections to only two of Wamser's questions dealing specifically with Loran C navigation. In our view, both questions were properly disallowed.[2] Furthermore, the record fails to support Wamser's contention that Judge Carlson improperly instructed the jury with respect to judicial notice. Judge Carlson did not make any statements to the jury concerning judicial notice, either while Officer Campbell was testifying or in his final jury instructions.

After considering the record as a whole, we conclude that Judge Carlson properly took judicial notice of the validity of the scientific principles underlying Loran C navigation and of the theoretical accuracy of the Loran C system. We further conclude that Wamser was given ample opportunity to challenge the accuracy of Officer Campbell's testimony concerning the Loran C reading he obtained for Wamser's vessel. We therefore reject Wamser's separate claim that his constitutional rights to confrontation and cross-examination were violated.

■ Wamser has additionally argued that Judge Carlson erred in refusing to suppress the Loran C reading for his vessel.

**2.** First, Wamser attempted to question Officer Campbell about his knowledge of a shutdown by coast guard officials of all Alaska Loran C transmitting stations. Wamser was aware that the shutdown occurred five days after this offense and was for routine maintenance purposes. We believe Judge Carlson properly sustained the objection to this question on grounds of relevance. Second, Wamser attempted to ask Officer Campbell the following question: "[W]ould you agree with the statement from Dutton's Navigation and Piloting, 13th Edition, published by the United States Coast Guard that says, 'Position accuracy degrades with increasing distance from transmitting stations as a result of variation and propagation conditions, losses of the signal path and internal receiver conditions'?" This question called for Officer Campbell's opinion as to the accuracy of a passage in a textbook outlining general circumstances under which the accuracy of Loran C readings might be impaired. The state's objection to this question was properly sustained because the question dealt exclusively with hypothetical sources of error and did not attempt to relate them to the Loran C reading in Wamser's case. Had Wamser's counsel attempted to deal specifically with the possible sources of error in the present case, we believe that he should have been permitted to do so, either by cross-examination or by presentation of independent, expert testimony. However, Wamser's counsel made no effort to establish the existence of specific factors that might have impaired the Loran C reading in this case. The record gives us no reason to believe that Judge Carlson would have prevented Wamser from exploring potential sources of error actually existing in his case. Our decision with respect to Judge Carlson's rulings on these two questions is unrelated to any failure by Wamser to make an offer of proof. To the extent Wamser's cross-examination concerning Loran C was restricted, it was because he failed to ask proper questions, not because he neglected to make an offer of proof. We therefore express no view as to whether a full offer of proof should generally be required on cross-examination.

Wamser claims that the Loran C reading as displayed in digital form on the Loran C receiver, was required to be preserved under the best evidence rule. A.R.E. 1002. Wamser further alleges that failure to preserve the original digital display, either photographically or by means of a mechanical printout, deprived him of due process. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Lauderdale v. State,* 548 P.2d 376 (Alaska 1976). Wamser acknowledges that Officer Campbell's Loran C receiver was not equipped with any mechanism capable of providing a printout. He nonetheless contends that it should have been so equipped. We find this argument to be frivolous and hold that neither A.R.E. 1002 nor due process mandated exclusion of the Loran C reading.

The conviction is AFFIRMED.

SINGLETON, Judge, concurring.

I join in the court's judgment but believe a few additional remarks are necessary to clarify our response to the defendant's first argument.

Wamser's conviction was based in part on Officer Campbell's testimony that according to Campbell's Loran C receiver Wamser was fishing in closed waters. Wamser argues that before presenting this testimony, the state was required to establish a foundation showing: (1) the validity of the Loran C navigational system in general, and (2) its significance in Wamser's case. He relies on R. Lempert and S. Saltzburg, *A Modern Approach to Evidence* 55 (1977). Wamser further contends that in order to meet the first prong of this test, the state would have to satisfy the test established in *Frye v. United States,* 293 F. 1013, 1014 (D.C. App.1923):

> Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or dis-

covery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.

Wamser reasons that since the validity and reliability of the Loran C is in this "twilight zone," a foundation based on expert testimony must be provided on a case-by-case basis before evidence of its operation can be admitted.

A majority of this court disagrees and concludes that the validity of the Loran C is sufficiently demonstrable so that it no longer occupies the twilight zone mentioned in *Frye.* As with radar and the breathalyzer machine, its validity may be assumed. I am not convinced that this determination is erroneous.

It is clear, however, that Alaska Rule of Evidence 201 governing judicial notice has absolutely nothing to do with the resolution of this question. A.R.E. 201 applies only to the kind of fact questions normally decided by the trier of fact. A.R.E. 201(a), *Commentary* at 37–38. A.R.E. 201 has absolutely no bearing on a judge's determinations of foundation pursuant to A.R.E. 104(a). Accordingly, I do not join in that part of the court's opinion purporting to apply A.R.E. 201 to Wamser's claim.

Alaska Rule of Evidence 104(e) makes it clear that the trial court's preliminary determination that a party has laid a proper foundation for the admission of evidence does not preclude the party's opponent from contradicting that evidence with other evidence affecting its weight or credibility. Wamser argues that he was restricted in his cross-examination of Officer Campbell, but I agree with the majority that the record does not support his argument.

Finally, the court's implicit conclusion that the *Frye* test was not intended to apply to this kind of situation, *i.e.,* one where the validity of a scientific principle is so well established as to be beyond dispute, makes it unnecessary for the court to decide whether the rule in *Frye* survives the enactment of the Alaska Rules of Evidence. 22 C. Wright & K. Graham, *Federal Practice*

and Procedure: Evidence § 5168 at 91 (1978) (arguing that *Frye* is no longer applicable under the new federal rules of evidence upon which Alaska's rules are patterned). *Accord* 3 J. Weinstein, *Federal Rules of Evidence* ¶ 702[03], at 702–16–17 (1982). *Contra* Gianelli, *The Admissibility of Novel Scientific Evidence: Frye v. United States A Half-Century Later,* 80 Col.L. Rev. 1197, 1229 (1980). One federal court seems to agree with Wright and Weinstein. *See United States v. Williams,* 583 F.2d 1194, 1197–98 (2d Cir.1978) *cert. denied,* 439 U.S. 1117, 99 S.Ct. 1025, 59 L.Ed.2d 77 (1979). *Accord State v. Hall,* 297 N.W.2d 80, 85–86 (Iowa 1980), *cert. denied,* 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1980) (rejecting *Frye* under the state rules patterned on the federal rules of evidence).[3]

The majority rejects Wamser's argument that his cross-examination of Campbell was unduly restricted by holding, in effect, that Wamser failed to make a sufficient offer of proof. *See, e.g.,* A.R.E. 103(a)(2):

(a) *Effect of Erroneous Ruling.* Error may not be predicated upon a ruling which admits or excludes evidence ·unless a substantial right of the party is affected; and

. . . .

(2) *Offer of Proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

This is a troublesome holding since the applicability of the federal counterpart of A.R.E. 103(a)(2) to questions on cross-examination is in some doubt. *See* 21 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5040, at 219–221 (1977). *See, e.g., Saltzman v. Fullerton Metals Company,* 661 F.2d 647, 653 n. 8 (7th Cir. 1981) ("The Federal Rules of Evidence do

not differentiate between the exclusion of evidence on direct and cross-examination and have *not* been applied to create such a distinction." (emphasis added)). *But see Padilla v. State,* 601 P.2d 189 (Wyo.1979).

The Alaska Supreme Court, in a decision admittedly reached prior to adoption of the Alaska Rules of Evidence, discussed this issue in an analogous context in determining whether limitations on cross-examination were harmless error. In *Lauderdale v. State,* 548 P.2d 376, 381 (Alaska 1976), the court said:

It does not matter that defense counsel cannot know in advance what pertinent facts may be brought out in cross-examination. As the United States Supreme Court has said:

It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial. [Quoting *Alford v. United States,* 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624, 628 (1931)].

The court purported to hold that limitations on cross-examination could never be harmless error. I agree with the majority in this case that we should not follow the

---

3. Wamser's analysis, based on *Frye,* is flawed by his inability to distinguish between the role of the court in ruling on foundation and the role of the jury in determining the adjudicative facts of Wamser's case. The analysis is also flawed by Wamser's inability to understand that Loran C may be generally accepted in the field in which it belongs and, nevertheless, provide a totally inaccurate reading in a specific case. Wamser's inability or unwillingness to keep these issues separate accounts, in part, for the majority's rather cursory treatment of his argument.

dicta in *Lauderdale* to that extent. Nevertheless, I think any harmless error test must be stringently applied. It is only because Wamser's counsel in oral argument was unable to articulate any theory under which any possible answer to his questions might have been helpful to the defense that I join in the court's opinion affirming Wamser's conviction. *See Padgett v. State,* 590 P.2d 432, 435 (Alaska 1979) (holding a restriction on cross-examination of prosecuting witness in rape case not error in absence of offer of proof in accordance with AS 12.45.045).