**STATE of Alaska, Petitioner,**

v.

**Clinton T. ANDREWS, et al., Respondents.**

**No. A–8020.**

Court of Appeals of Alaska.

Jan. 30, 2004.

**17.** AS 10.20.051(b).

**20.** *Id.* at 174–75.

**21.** 25 U.S.C. § 477 (2003).

Kenneth J. Diemer, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho and Gregg D. Renkes, Attorneys General, Juneau, for Petitioner.

Louis James Menendez, Juneau, for Respondents.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

Based on Loran C readings, Clinton T. Andrews and nine other commercial fishers were charged with fishing in closed waters.[1] The commercial fishers moved to suppress the Loran C evidence. The district court agreed with the defendants and excluded the Loran C evidence for two reasons. First, the district court excluded the evidence because the State had not created and preserved a printout of the Loran C readings. Second, the district court excluded the Loran C evidence on foundational grounds, finding that the State had not shown that there was a maintenance program for the Loran C receivers or that there was a training program for the Fish and Wildlife Protection troopers who used Loran C. We granted the State's petition for review. For the reasons set out below, we reverse the decisions of the district court.

*Facts and proceedings*

In 1999, Andrews and nine others[2] were charged with commercial fishing in closed

---

1.  5 Alaska Administrative Code (AAC) 06.350(f) (except for circumstances not relevant to this case, "[s]almon may not be taken in any locations that are not described in 5 AAC 06.200[.]").

2.  The other fishers and their trial court case numbers are Giuseppe F. Costa (3NA–99–146 CR), Russell Delgrosso (3NA–99–123 CR), Michael A. Green (3NA–99–103 CR), Scott A. Higgins (3NA–99–106 CR), Curt E. Marble (3NA–99–

waters. At the time the defendants were charged, the boundary lines that separated closed from open waters were defined by electronic signals received from Loran C transmitters.[3] Consequently, state Fish and Wildlife Protection troopers and commercial fishers used Loran C receivers to determine their vessels' positions in relation to the boundary lines. The troopers likewise used Loran C receivers to locate the fishing vessels. (Troopers and commercial fishers now use global positioning satellites. *See* 5 AAC 06.206 (2001).)

After the defendants were charged, they consolidated their cases and moved to exclude the location readings provided by the troopers' Loran C receivers. The fishers argued that the readings should be excluded because Loran C technology was not scientifically reliable, and because the State had failed to preserve any record of the Loran C readings on the receivers used by the troopers.

An evidentiary hearing was held, but little of the testimony concerned the investigation of any particular defendant in this case. Rather, the hearing primarily addressed the science underlying Loran C, and how troopers were using Loran C in Bristol Bay to enforce fishing regulations.

After the hearing, Magistrate Deborah Burlinski granted the defendants' motion; she excluded the Loran C evidence because the troopers had not created a printout of the Loran C readings at the time they determined the location of the defendants' vessels. She also ruled that the State had not met the foundational requirements to admit Loran C evidence because the State had no program to ensure that the receivers were properly maintained, or that the troopers were properly trained on how to use the receivers.

She found, however, that Loran C technology was scientifically reliable.

*When the State prosecutes a commercial fishing violation based on a Loran C reading, is the State required to preserve a contemporaneous photograph or printout of the Loran C reading?*

The defendants argue that due process requires the State to create a contemporaneous printout of Loran C readings. Although Magistrate Burlinski recognized that we had rejected this argument in *Wamser v. State*,[4] she agreed with the defendants and suppressed the Loran C readings. She did so because she compared the Loran C receiver to a breath testing instrument, and applied the legal rationale in *Lauderdale v. State*.[5] In *Lauderdale*, the supreme court excluded evidence of the defendant's breath test result on due process grounds because the State had failed to preserve the breath sample, thus depriving the defendant of his right to test the reliability of that evidence.[6]

■ But the *Lauderdale* decision was based on considerations not present in *Wamser* or in this case. Lauderdale was arrested for driving while intoxicated and was required to provide the State with a breath sample, which was tested on the breathalyzer, an instrument that the State controlled. The result of this test was sufficient to support Lauderdale's conviction for operating a motor vehicle with a blood alcohol content above the legal limit.[7] The supreme court agreed with Lauderdale that a retest of his breath sample could provide "material evidence" on the issue of his guilt or innocence.[8] Yet the breath sample and the only available testing instrument were in the sole possession of the State. By failing to preserve Lauderdale's breath sample or offer Lauderdale an equivalent method of checking the

069 CR), Paul D. McGee (3NA–99–134 CR), Michael L. Sather (3NA–99–093 CR), Grant L. Thompson (3NA–99–129 CR), and Drew B. Wise (3DI–99–138 CR). All ten cases were apparently consolidated for the hearing.

3. *See, e.g.,* former 5 AAC 06.200(c) (1988); former 5 AAC 06.205 (1988).

4. 672 P.2d 163, 166 (Alaska App.1983). Magistrate Burlinski found the *Wamser* case inapplica-

ble because the Loran C instrument used in that case was not equipped with any mechanism capable of providing a printout.

5. 548 P.2d 376 (Alaska 1976).

6. *Id.* at 381.

7. *Id.* at 380 (citing former AS 28.35.033(3)).

8. *Id.* at 380.

State's reading, the State destroyed the only direct evidence of the ultimate question involved in *Lauderdale*—that is, "the alcoholic content of Lauderdale's blood." [9] Destroying the only available evidence precluded Lauderdale from challenging the reliability or credibility of the results of the breathalyzer test.[10] Because the State had prevented Lauderdale from challenging the accuracy of this evidence, the supreme court ruled that due process required exclusion of the test results.

Loran C receivers differ significantly from state-controlled breath test instruments. In a case based on Loran C readings, the State does not prosecute a defendant with test results generated from evidence that only the State possesses. Instead, the case is supported by readings from the State's Loran C receiver, which is receiving the identical electronic signals available to a commercial fisher's Loran C receiver. Unlike a driver facing a prosecution based on the state's breath test result, a commercial fisher can independently receive and obtain a reading from the same Loran C signals that the State uses. The commercial fisher can offer evidence of this independent reading, and can potentially store an electronic record or create a hard copy of the receiver's Loran C output. In short, the commercial fisher has the independent ability to challenge the reading of the State's receiver.

We again conclude, as we did in *Wamser*, that when the State enforces commercial fishing regulations using Loran C receivers, due process does not require the State to create a contemporaneous electronic or photographic printout of the Loran C readings.

The defendants next argue that under the best evidence rule, Loran C evidence is inadmissible unless the readings are recorded in a printout.[11] But we rejected this argument in *Wamser*,[12] and the defendants have dem-

onstrated no reason to overrule our prior decision.[13]

■ Evidence Rule 1002 provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required[.]" Evidence Rule 1001 defines writings and recordings as "letters, words, or numbers ... set down ... by ... magnetic impulse, mechanical or electronic recording, or other form of data compilation." [14] A Loran C receiver provides a continuous readout of the electronic signals broadcast by Loran C transmitters. In this case, the Loran C readings were not "set down" or otherwise stored as a magnetic impulse, a mechanical or electronic recording, or in some other form of data compilation. Although this information apparently could have been stored as data, the defendants have not convinced us that the best evidence rule requires that it be so stored. Nor have the defendants otherwise convinced us that the lack of a printout should render the troopers' observations of the Loran C continuous electronic readings inadmissible. We therefore conclude that the actual electronic readings displayed by the Loran C are not subject to the best evidence rule.

*When the State prosecutes a commercial fishing violation based on a Loran C reading, must the State introduce foundational evidence concerning the maintenance of the Loran C unit and the training of the person who read the unit? If so, what should be the nature of this foundational evidence be?*

■ Magistrate Burlinski excluded evidence of the Loran C readings because the State did not introduce foundational evidence showing that there were programs for regu-

---

9.  *Id.*

10.  *Id.* at 380–81.

11.  *See* A.R.E. 1002.

12.  672 P.2d at 166.

13.  *See Erickson v. State,* 950 P.2d 580, 587 (Alaska App.1997) (a litigant seeking to have an appellate court overrule a prior decision "must dem-

onstrate convincing reasons why the existing rule was originally erroneous or is no longer sound because of changed conditions. The litigant must also demonstrate that more good than harm would result from a departure from precedent.").

14.  *See* A.R.E. 1001(1).

lar maintenance of the Loran C receivers used in these cases, or for the training of the officers who used the receivers and read the readings. But despite the lack of these programs, the evidence at the hearing indicated that the troopers involved in these cases ensured that the Loran C units were properly functioning, that proper procedures were followed, and that the troopers were reasonably qualified to use Loran C technology.[15] In our view, this evidence would have been sufficient to satisfy the foundational requirements for introduction of the Loran C evidence if the evidence had been tied to the specifics of the defendants' cases.

### Conclusion

The decisions of the district court are REVERSED.

---

15. *See generally* Paul C. Giannelli & Edward J. Imwinkelried, 1 *Scientific Evidence* § 1–11, at 70–76 (3rd ed.1999 and 2003 supplement).